**M & T CHEMICALS, INC.,**
Plaintiff,

v.

**INTERNATIONAL BUSINESS MA-
CHINES CORPORATION and Her-
man Koretzky, Defendants.**

**No. 74 Civ. 5666.**

United States District Court,
S. D. New York.

Nov. 20, 1975.

Curtis, Morris & Safford, P. C., by John A. Mitchell, Pasquale A. Razzano, New York City, for plaintiff.

Hansel L. McGee, Murray Nanes, Yorktown Heights, N. Y., for IBM Corp.

Pollock, Philpitt & VandeSande by Elliott I. Pollack, Washington, D. C., for defendants IBM Corp. and Herman Koretzky.

ROBERT L. CARTER, District Judge.

## OPINION

In this diversity case plaintiff, alleging the misappropriation and continuing use of its trade secret by defendant, seeks declaratory and injunctive relief, an accounting of profits, compensatory and punitive damages, and an assessment of costs and attorney fees. The instant action is before the court on plaintiff's motion, pursuant to Rule 15(a), F.R.Civ.P., for leave to file a second amended complaint, and defendants' motion, pursuant to Rule 12(b), F.R. Civ.P., to dismiss the amended complaint as being barred by the Statute of Limitations.[1] There is no dispute regarding the jurisdictional amount.

### Background Facts

 The amended complaint[2] and memoranda submitted by the parties reveal the following. Prior to his employment by defendant International Business Machines Corp. ("IBM"), defendant Herman Koretzky ("Koretzky") was employed by Hanson-Van Winkle-Munning Co. ("H–VW–M") to which plaintiff M&T Chemicals, Inc. ("M&T") is now the successor in interest.

As a condition of his employment by H–VW–M, Koretzky entered into an employment contract on March 5, 1956, by which he agreed that any invention made by him relating to, pertaining to or connected with the business of H–VW–M was to be the property of H–VW–M and further agreed to assign to H–VW–M all patents or patent applications for such inventions. Koretzky left H–VW–M and joined IBM in July of 1958.

On April 9, 1965, IBM filed a patent application, Serial No. 447,076, for an invention disclosed to IBM by Koretzky;

---

1. Defendants contend that even if the amendments were allowed, the second amended complaint would still be time-barred.

2. The allegations of the complaint are assumed to be true for purposes of the motion to dismiss, *Heit v. Weitzen*, 402 F.2d 909, 913 (2d Cir. 1968), and are considered in the light most favorable to the plaintiff. *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 253 F.Supp. 359, 367 (S.D.N. Y.1966).

the latter had assigned the invention to IBM on April 6. United States Patent No. 3,354,059 ("-059") was granted to IBM as record assignee on November 21, 1967.

The patented invention related to the electro-deposition of nickel-iron magnetic alloy films. The amended complaint states that during the course of his employment by H–VW–M, Koretzky and other co-employees worked on and developed a process and invention substantially equivalent to the one described and claimed in the -059 patent. It is further alleged that Koretzky conceived that invention while he was with H–VW–M and that according to his agreement with H–VW–M the rights to the -059 patent belong to M&T as successor in interest of H–VW–M and should have been assigned to M&T.

IBM has filed foreign patent applications which are substantially equivalent to the application filed in the United States, and it is claimed that IBM has deliberately allowed certain of these foreign patents and/or applications to lapse and has disclaimed others. Further, the amended complaint states that the defendants have attempted to dedicate certain claims of the -059 patent pursuant to 35 U.S.C. § 253. M&T first became aware of the -059 patent sometime in 1973; by letter to IBM dated December 7, 1973, it first claimed ownership to the patent, more than six years after the patent had been issued. At the end of 1974, plaintiff filed the original complaint; a few days later an amended complaint was filed adding certain exhibits omitted from the original. Thus the action was initiated more than seven years after the -059 patent was issued.

3. The proposed amendments read as follows: "11–(a). The invention conceived by Koretzky and his co-employees was not published by plaintiff or made available otherwise to the public prior to the date of the original complaint herein and was a trade secret of plaintiff;"

"12–(a). On information and belief, IBM aided and abetted by Koretzky has, since the

*Discussion*

■ Plaintiff seeks leave to amend its complaint to set forth more fully the conduct of defendants which plaintiff maintains constitutes a continuing tort with regard to plaintiff's trade secret information.[3] Rule 15(a) provides that leave to amend "shall be freely given when justice so requires;" despite the liberal amendment policy of the Rule, see *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), courts have denied leave to amend where plaintiff's proposed amendment advances a claim that is legally insufficient or otherwise clearly without merit. See *Feldman v. Lifton,* 64 F.R.D. 539, 543 (S.D.N.Y.1974) and cases cited therein.

It is agreed that plaintiff's cause of action is based solely on a continuing tort theory; the amendments seek either to set out or "amplify" plaintiff's contention that defendant's conduct constitutes a continuing wrong sufficient to avoid the running of the Statute of Limitations. However, even if the amendments were accepted the complaint would still be time-barred.

■ Patents "have the attributes of personal property," 35 U.S.C. § 261, and since this is a diversity case the court must look to the law of New York governing actions involving such property. *Arnold's Ice Cream Co. v. Carlson,* 330 F.Supp. 1185 (E.D.N.Y.1971). The relevant New York statute is CPLR § 214(3) and (4), which reads:

"The following actions must be commenced within three years:

· · · · · ·

"3. an action to recover a chattel or damages for the taking or detaining of a chattel;

grant of the –059 patent, continuously used and exploited the property of M&T which at the time of filing the original complaint herein was a trade secret of M&T. Further, on information and belief, the –059 patent was and continues to be part of a licensing program of IBM by which IBM derives substantial income to the detriment of M&T."

"4. an action to recover damages for an injury to property;

. . . .

■ Defendant argues that plaintiff's cause of action arose either when Koretzky assigned his invention to IBM on April 6, 1965, or on November 21, 1967, when the -059 patent was issued. In either event, the three-year limitation period would have expired more than four years prior to the commencement of this action. Plaintiff contends that if the tort is viewed as a continuing wrongful use, rather than as a single misappropriation, then the statute has not run.[4]

■ The sole question before the court then is "whether a single cause of action arises (and the statute of limitations commences to run) when a trade secret of the nature of plaintiff's is first misappropriated, disclosed and used, or whether each use is a new tort and gives rise to a new cause of action with its own period of limitation." *Lockridge v. Tweco Products, Inc.*, 209 Kan. 389, 497 P.2d 131, 134 (1972). Under the latter approach an injured party can recover for use during the statutory period preceding the filing of the suit so long as there has been a use by the defendants during that period. The leading case supporting the continuing tort theory is *Underwater Storage, Inc. v. United States Rubber Co.*, 125 U.S.App.D.C. 297, 371 F.2d 950 (D.C.Cir. 1966). See also *Telex Corp. v. International Business Machines Corp.*, 367 F.Supp. 258, 360 (N.D.Okl.1973), *aff'd in part, rev'd and remanded in part,* 510 F.2d 894 (10th Cir. 1975); *cf. Titcomb v. Norton Co.*, 208 F.Supp. 9, 15 (D.Conn.1959), *aff'd on other grounds,* 307 F.2d 253 (2d Cir. 1962). The majority of courts have rejected *Underwater Storage*, however, finding that the injury to a plaintiff's interest occurs, and the statute begins to run, either at the time of misappropriation or when disclosure of the trade secret is made, such as when a patent issues or when an invention is put into public use. See *Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288 (9th Cir. 1969); *Jones v. Ceramco, Inc.*, 378 F.Supp. 65 (E.D.N.Y.1974), *modified,* 387 F.Supp. 940 (E.D.N.Y.1975); *Shatterproof Glass Corp. v. Guardian Glass Co.*, 322 F.Supp. 854 (E.D.Mich.1970), *aff'd,* 462 F.2d 1115 (6th Cir. 1972), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 518, 34 L.Ed.2d

---

4. Plaintiff alternatively argues that even if the tort is not a continuing one, then the provisions of CPLR § 203(f) should apply to permit an action to be commenced within two years after the actual or imputed discovery of facts which show that a cause of action has accrued. It argues that the relevant date would then be 1973, when the –059 patent first came to its attention. A similar argument was rejected in *Gerber v. Manufacturers Hanover Trust Co.*, 64 Misc. 2d 687, 689, 315 N.Y.S.2d 601, 603 (Civil Ct. 1970), where the court stated:

". . . the Court of Appeals has noted that it is 'unquestionable' that the Statute of Limitations in conversion actions is not tolled by mere ignorance or lack of discovery of the wrong. Unless the statute itself expressly provides that the cause of action does not accrue until the facts are discovered, such as in cases of fraud or breach of prospective warranty, the statutory period begins to run from the time of the wrong even though the injured party had no knowledge of its existence. . . .

"The discovery accrual provision of subdivision (f) of CPLR Sec. 203 is of no avail to the plaintiff, since it only comes into operation in a case where the applicable Statute of Limitations runs from discovery, actual or imputed; it is not intended to create a new standard of measure. . . ."

Moreover, plaintiff *had* imputed knowledge of its cause of action on November 21, 1967, when the patent was issued. " 'Issuance of a patent and recordation in the Patent Office constitutes notice to the world of its existence.' " *Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 157 (S.D.Cal.1954), *aff'd sub nom., Kimberly Corp. v. Hartley Pen Co.*, 237 F.2d 294, 304 (9th Cir. 1956). See *Sontag Chain Stores Co. v. National Nut Co.*, 310 U.S. 281, 295, 60 S.Ct. 961, 84 L. Ed. 1204 (1940); *Newell v. West*, 18 Fed. Cas.No.10,150, p. 50 (C.C.N.D.N.Y.1875). Plaintiff thus had imputed knowledge of the patent's existence, the subject matter it covered, the fact that Koretzky was the inventor, and IBM's record title to the patent more than two years before it filed this suit.

487 (1972); *Lockridge, supra; Boehm v. Wheeler,* 65 Wis.2d 668, 223 N.W.2d 536 (1974).

Several reasons dictate that I follow the majority view and dismiss the complaint for failure to state a claim upon which relief can be granted. First, the nearest New York case in point requires a finding that the complaint is time-barred. In *Sachs v. Cluett Peabody & Co.,* 265 App.Div. 497, 39 N. Y.S.2d 853 (1st Dept.1943), plaintiff alleged that defendant misappropriated plaintiff's trade secret, obtained patents thereon, and licensed others to make use of plaintiff's principle and invention. As here, plaintiff in *Sachs* demanded an injunction, an assignment of the patent and an accounting of profits. Defendant moved to dismiss the complaint on the ground that plaintiff's cause of action was barred by the Statute of Limitations; plaintiff argued that defendant's activities constituted a continuing wrong.

In considering this contention, the court stated:

"A continuing right may exist where there is an interference with but not destruction or conversion of property. This is aptly illustrated in the example set forth in the brief submitted on behalf of defendant: 'If defendant hits plaintiff's horse repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroys plaintiff's horse, or takes it and claims it as his own, plaintiff's right accrues immediately and he must sue within the period of limitation measured from that date—or never.'"

265 App.Div. at 501, 39 N.Y.S.2d at 857. The court held that the patents obtained by defendant "published" the trade secret; at that point plaintiff's rights on his trade secret were destroyed and no subsequent activities by defendant could constitute a continuing misappropriation of the destroyed secret. *See Comment,* 42 N.Y.U.L.Rev. 565, 569 (1967). Several commentators have agreed that such general disclosure of a trade secret totally destroys it. *See Comment,* 42 N.Y.U.L.Rev., *supra,* at 566; Milgrim, *Trade Secrets* § 2.06[1], at 2–29 (1975); 4 Callmann, *The Law of Unfair Competition Trademarks and Monopolies* § 87.5, at 157–58 (3d ed. 1970).

If the basis for the theory of continuing wrong lies in the fear that "continuing use of a trade secret constitutes continuous jeopardy to the rightful owner's protection [because] the wrongful user might tend to make the secret generally known," *Milgrim, supra,* § 7.04[2] at 7–18—7–19, 7–23, full-scale disclosure through the issuance of a patent renders the continuing tort theory inapplicable to the instant case. Hence, the issuance of the -059 patent totally destroyed any value the trade secret might have had, and the only action available to plaintiff was one for misappropriation and complete destruction of the secret upon such issuance, and not for any future or continued use by defendants.

Second, the law in this Circuit is that a misappropriator may use information it had previously acquired of a trade secret after the latter has been generally published. *See Conmar Products Corp. v. Universal Slide Fastener Co.,* 172 F. 2d 150 (2d Cir. 1949). *See also Tempo Instrument, Inc. v. Logitek, Inc.,* 229 F. Supp. 1, 3 (E.D.N.Y.1964) ("it is well established in this Circuit that one who is alleged to have wrongly utilized a trade secret is accountable under the doctrine of unfair competition only for such use as is made of the secret before it is made public by the issuance of a patent thereon"); *Titcomb, supra,* 208 F.Supp. at 18. The court in *Underwater Storage* held that the misappropriator and his privies cannot " 'baptize' their wrongful actions by general publication of the secret." 371 F.2d at 955. But the upshot of this reasoning is that once the secret is disclosed everyone but the misappropriator can lawfully use that information.

Such a conclusion is required by the utilization of the continuing tort approach, and flies in the face of the *Conmar* rule, *supra*, by imposing a permanent disability on the misappropriator which coincidentally undercuts the rationale of the Statute of Limitations:

"Should the defendants then be forever barred from manufacturing a product which is in the public domain? This would be the practical result if each use by defendant is a new tort. They could not, ten years hence, initiate production of plaintiff's rotary ground clamp though thousands like it were on the market. We think this sort of disability, extending *ad infinitum*, is an unwarranted penalty for what we regard here as one transgression, however aggravated. Unlike the *Underwater Storage* court, we think that time may and does 'cleanse the hands' of many a wrongdoer, at least to the extent that his moral liability may no longer be legally enforced. Even one who misappropriates and remains in adverse possession of that most sacrosanct of property, real estate, eventually passes beyond the law's reach—although every day of his continued possession and use may deeply affront the sensibilities and insult the 'legal title' of the erstwhile true owner. The adverse possessor of realty, and the converter or embezzler of personalty, have the same continuing duty as that of defendants here, *i. e.*, a duty not to use that which is rightfully another's. That duty will be enforced by the courts in an action timely brought, but not thereafter."

*Lockridge, supra,* 497 P.2d at 138.

Third, if, as it has been suggested, the court in *Underwater Storage* construed trade secret misappropriation and use as a continuing tort "presumably to assure the injured owner judicial relief which might otherwise be foreclosed if the statute were to run only from the date of the misappropriation, since knowledge of the misappropriation might not be forthcoming until the statute had run," *Comment,* 42 N.Y.U.L.Rev., *supra,* at 567, then that rationale finds no resting place here where plaintiff had imputed knowledge of the misappropriation since November, 1967. *See* note 4, *supra; see also Lockridge, supra,* 497 P.2d at 138.

The factual considerations which bar plaintiff from claiming title to the -059 patent similarly bar it from claiming ownership of the foreign equivalents. *Koehring Co. v. National Automatic Tool Co.,* 257 F.Supp. 282, 289 (S.D.Ind.1966), *aff'd,* 385 F.2d 414 (7th Cir. 1967). Plaintiff's motion to amend its complaint is denied, and defendant's motion to dismiss the amended complaint is granted.

This disposition obviates the need to consider defendants' alternative contentions that the amended complaint is barred by laches, that IBM has, by adverse possession, perfected any defect in its title to the -059 patent, and its suggestion that plaintiff had actual knowledge of the -059 patent in 1967. Moreover, since the motion to dismiss is granted, defendants' motion under Rule 15(a) for leave to amend the answer and to counterclaim has been rendered moot.

So ordered.