DOLLAR ELECTRIC COMPANY, Plaintiff-Appellant, and Cross-Appellee,

v.

SYNDEVCO, INC., and Ford Motor Company, Defendants-Appellees, and Cross-Appellants.

Nos. 80–1100, 80–1130.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 12, 1981.

Decided Feb. 12, 1982.

Rehearing and Rehearing En Banc Denied April 20, 1982.

Certiorari Denied Oct. 12, 1982. See 103 S.Ct. 216.

Harness, Dickey & Pierce, John A. Blair, Birmingham, Mich., for defendants-appellees and cross-appellants.

Owen E. Perry, Reising & Ethington, Southfield, Mich., William H. Griffith, Whittemore, Hulbert & Belknap, Detroit, Mich., for plaintiff-appellant and cross-appellee.

Before WEICK * and ENGEL, Circuit Judges and PECK, Senior Circuit Judge.

WEICK, Circuit Judge.

The suit in the district court was brought by Dollar Electric Company (Dollar) against Syndevco, Inc. and Ford Motor Company for infringement of Winsand U.S. Patent No. 3,281,747(747), issued on October 25, 1966 and assigned to Dollar. The patent in suit is for a device which changes the output voltages from a transformer useful in this case by automobile manufacturers in the field of resistance welding.

The case was tried in an extensive bench trial, a jury being waived, before District Judge Feikens. The Judge gave careful consideration to all of the issues and wrote

* Judge Weick became a Senior Circuit Judge on December 31, 1981.

a 61 page opinion, in which he analyzed all of the issues, adopted findings of fact and conclusions of law, and appended thereto the five claims of the patent in suit and the drawings. Joint Appendix pages 22–83. Drawings, a, b and c. Judge Feikens held that all of the claims of the patent in suit were invalid. He further held that if claims 4 and 5 had been valid, that they were infringed by the accused device. Claim 1 he found to be essence of the invention and that the remaining claims contained additional elements that were either obvious or were anticipated by the prior art. Dollar has appealed only in No. 80–1100 from the judgment holding claims 4 and 5 of its patent invalid. It is noteworthy that since Dollar did not appeal from the judgment of the district court holding that Claims 1, 2 and 3 to be invalid, that part of the judgment has now become final and is the law of the case. Only claims 4 and 5 are in issue in this appeal. Defendants-Appellees have cross-appealed from that part of the judgment relating to infringement. For the reasons hereinafter stated, we affirm the judgment in No. 80–1100, and, since the patent is invalid, it is not necessary to decide the issue of infringement and the protective cross-appeal taken in No. 80–1130 is therefore dismissed at defendants cross-appellants' costs.

## I

Dollar manufactures electrical resistance welding machines for use in mass production assembly lines. Such machines are used primarily by automobile manufacturing companies. Electrical transformers are a component in these machines. Defendant Syndevco, Inc. (Syndevco) manufactures receptacle and plus components for these transformers. Dollar and Syndevco are both suppliers of defendant Ford Motor Co. (Ford), which purchases resistance welding equipment from Dollar, Syndevco, and others for use in its manufacturing plants.

Resistance welding consists of clamping two pieces of metal together and welding them by passing an electric current through them. The transformer controls the voltage which is applied. It is necessary to provide some means to adjust the output voltage of the transformer to accommodate thicknesses or different materials of the parts that are to be welded together. This is done by means of tap switches. During the 1950's and 60's the standard technology was to use rotary tap switches, as in prior patents Girton '431 design and Woofter '654.

A tap switch is a switch that connects an electrical power supply to any one or two or more taps. A tap is a branch connection to an electrical coil. A plug tap switch is a power supply for making an electrical connection to any one of several pairs of tap terminals. A transformer is an electrical device that is used to change the voltage of an alternating electrical current power supply to a higher or lower voltage.

In early 1962, Fisher Body requested Dollar to design a narrow transformer 4½ inches wide. This was several inches narrower than the normal transformer at that time. Dollar's employee, Mr. Winsand, began work on this project in April 1962. He could not make the transformer small enough using currently available tap switches. He then thought of combining the functions of the primary disconnect plug and tap switch. This eliminated all moving parts of the tap switch of the Girton '431 transformer and permitted a successful design in the required size. The new transformers were built and tested by July 9, 1962 and later patented. They were placed in service at Fisher Body's Marion, Indiana plant.

Winsand made two versions of his invention, a circular version and a rectangular or "in-line" version. The Winsand invention had several advantages over previous technology: It was more compact and supplied a lesser need for a more reliable, inexpensive construction for the tap switch.

When the Winsand transformer proved successful at Fisher Body, Ford began using the transformers at its Metal Stamping Division, under the supervision of Mr. John Murphy. After ten years of using Dollar's transformers, Mr. Murphy designed a simi-

lar transformer in which the tap terminals are housed in a plastic end cover for the transformer. This is the accused transformer. Syndevco does not manufacture complete transformers, so Ford purchased Girton '431 transformers and supplied them to Syndevco. Syndevco then cannibalized the Girtons and fitted them with the end cover and primary disconnect plug of the accused transformers. After four years of debugging, the Murphy transformer was adopted as the standard for the Metal Stamping Division of Ford.

## II

### Claim 4

The district judge held that "Claim 1 sets forth the essence of the invention." We agree. He listed the nine basic elements of the claim as follows:

(1) A transformer having a primary and a secondary

(2) A plurality of taps connected at spaced points to the primary

(3) The taps are connected to tap terminals, which are insulated from one another

(4) A primary disconnect plug with a pair of spaced female terminal receptacles connected to a voltage source

(5) The tap terminals are arranged so that there are two or more pairs created, the pairs being spaced apart the same distance as the plug receptacles

(6) Neither terminal of the first pair of terminals is a member of another pair

(7) A plug that can be connected to energize the primary by fitting into removable contact with the terminals

(8) The pairs of tap terminals are spaced so that the plug can bridge various pairs of them

(9) The primary disconnect plug functions as a tap switch

He describes the remaining claims as follows:

Claims 2 and 4 more specifically describe a circular version of the Claim 1 device, without specifically referring to Claim 1.

In Claim 2, it is specified that the pairs of tap terminals called for by (5) above be achieved by placing one common tap terminal in the center of a circular array of other tap terminals. Thus, by rotating a plug around the center tap, various pairs are produced, with various corresponding output voltages. This, of course, does not meet the requirement (6) in Claim 1 that "neither terminal of said first pair of terminals is a member of another pair;" the center tap terminal is common to every pair.

Claim 4 essentially repeats Claim 2 but recites the addition of a housing surrounding the tap terminals, with an opening through which the primary plug passes. The plug is fitted with a cover plate which, after the plug is engaged, may be fastened to the housing, totally enclosing the terminal assembly. Claim 4 is represented pictorially by PTX 19, Appendix "B." (The labels are mine)

Claim 3 is simply another arrangement of the tap terminals. There are six terminals, arranged in three horizontal rows of two each. The top and bottom rows are individual tap terminals, connected at varying points electrically to the primary coil. The two middle terminals are shorted together and are both connected to the opposite end of the primary from the four taps already described. By positioning the plug across the four pairs of terminals formed by the top and bottom rows, four output voltages may be obtained. Claim 5 recites Claim 3 with the addition of a housing surrounding the terminals and a cover plate behind the plug. With the addition of a gasket, the cover plate completely seals the terminal and plug construction from the outside.

Claim 4 of the patent in suit is based upon invalid Claim 2 with the additional element of a housing that encloses the primary and secondary windings and the primary tap terminals with an opening through which the plug may be inserted to engage a selected pair of tap terminals. It specifies a plate secured to the plug to cover the portion of the opening that is not

covered by the plug when it is inserted into the opening. Both claims 2 and 4 are restricted to the circular arrangement of the tap terminals illustrated in the patent drawings.

Judge Feikens held that Claim 2 was fully anticipated by the German patent to Bauer, No. 1,303,494 or its Italian counterpart, No. 315,072. Since Dollar did not appeal from this holding, it has become final and is binding on this court as the law of this case. Judge Feikens further held that Claim 4 was an obvious adaption of the Bauer plug tap switch.

To specify a housing to enclose the equipment did not amount to invention as it was old as the art. *American Seating Co. v. National Seating Co.*, 586 F.2d 611 (6th Cir. 1978).

■ The district judge further held that Claim 4 was invalid as an obvious combination of Bauer '494 and Girton '431 within the meaning of 35 U.S.C. § 103. We agree.

Dollar objected to the court's use of Girton '431 as prior art on the ground that it was not cited by the defendants as required by 35 U.S.C. § 282. In fact, it was not cited to the patent office and the patent was issued without the citation of any relevant prior art. Dollar also claimed surprise, but the inventor Winsand was not surprised and made no such claim. He testified for Dollar during its prima facie case and on cross-examination stated that the tap switch and transformer disclosed in Girton '431 patent as exemplified by the physical specimen PX15A was the closest prior art of which he was aware when he made his invention. Girton patent was introduced in evidence by Dollar and is marked PX10.

■ The court therefore was fully justified in considering the testimony of the inventor and applying it to the case. The fact that the patent office did not consider the applicable prior are which clearly existed as shown by the testimony of the inventor, greatly weakens and largely dissipates the statutory presumption of validity of the patent under 35 U.S.C. § 282. *Dunlop v.*

*Kelsey-Hayes Co.*, 484 F.2d 407, 413 (6th Cir. 1973); *B. F. Goodrich Co. v. Rubber Latex Products, Inc.*, 400 F.2d 401 (6th Cir. 1968). Claim 4 is therefore invalid.

### III

### Claim 5

■ Claim 5 of the Winsand patent is based on invalid Claim 3 with the recitation of an additional element of features of a housing that encloses the primary and secondary windings and the tap terminals. It also specifies an opening in the housing exposing the tap terminals and a rectangular plate secured to the plug for covering the opening when the plug is inserted through the opening and into the housing. Claims 3 and 5 are restricted to the straight line arrangement of the tap terminal shown in Figs. 5–8 of the drawings of the Winsand patent. As found by the district court, this was an obvious rearrangement of the circular arrangement of the Winsand patent and was disclosed in the German patent to Bauer.

The patent examiner in rejecting Winsand's claims stated:

> Whether the terminals of a disconnect plug and or the tap terminals are arranged in a straight line or in a circular is without patentable merit.

Dollar's expert witness Townsend Beaman testified that he regarded them as equivalents. In other words, it was obvious.

The arrangement of three tap terminals in a straight line so that the plug can engage the middle terminal and either of the other two is disclosed in the prior patent to McArdle '200.

What has been said in discussing Claim 4 is equally applicable to Claim 5 and the district court's ruling as to Claim 4 requires a holding that Claim 5 is also invalid and we so hold.

### IV

In our opinion, the findings of fact adopted by the district court are supported by substantial evidence and its conclusions of

law are correct. The court did not abuse its discretion in disallowing attorneys' fees.

The judgment of the district court is affirmed. Each party will pay its own costs in Appeal No. 80–1100.

ENGEL, Circuit Judge, concurring.

I concur because I agree that the district court's findings that Claims 4 and 5 are invalid as an obvious combination of Bauer '494 and Girton '431 within the meaning of 35 U.S.C. § 103 are not clearly erroneous. I would avoid the suggestion in the majority decision that the trial judge's rejection of Claim 2, not appealed from here, is the "law of the case" and for this reason commands a similar result for Claim 4. 35 U.S.C. § 282 cautions:

> A patent shall be presumed valid. *Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim. . . .*

(emphasis added). The legislative history of this section seems to indicate that a "law of the case" approach in circumstances such as this is not favored. S.Rep.No. 301, 89th Cong., 1st Sess. *reprinted in* [1965] U.S.Code Cong. & Ad. News 2315, 2319.

I agree that Judge Feikens' use of Girton '431 was proper. It came as no surprise at trial, and appears to be expressly permissible under 35 U.S.C. § 282 "on such terms as the court requires." *Shatterproof Glass Corp. v. Guardian Glass Co.,* 462 F.2d 1115, 1121 (6th Cir.), *cert. denied* 409 U.S. 1039, 93 S.Ct. 518, 34 L.Ed.2d 487 (1972).