Joseph A. Petnel, Appellant, *v.* American Telephone and Telegraph Company et al., Respondents.

Third Department, November 17, 1952.

*Francis X. Giaccone* and *Asher Marcus,* for appellant.

*S. Hazard Gillespie, Jr.,* and *Francis W. Phillips* for respondents.

BERGAN, J. When the mosaic of legal conclusions stated in the complaint is separated from factual allegations the pleading is to be read as alleging the defendants' unauthorized appropriation of plaintiff's invention which is useful in dial telephones. The question presented is whether the Statute of Limitations has run. The court at Special Term has found affirmatively on this point and has dismissed the complaint.

Running through the pleading are statements that the use of plaintiff's invention was " in violation of a duty " and was " with the intent to * * * cheat and defraud " plaintiff and that the defendants were " acting in concert " to " cheat and defraud " plaintiff.

But we regard the following to be a summary of the complaint in a factual aspect most favorable to plaintiff.

The plaintiff invented an improvement for dial telephones and made models and drawings of his invention. He offered in 1933 to submit the drawings and models to defendant American Telephone and Telegraph Company on condition that this defendant employ him if it decided to use his invention. On American's invitation plaintiff submitted his drawings and models to it, but on an express condition imposed by plaintiff that he was to be employed if there were any use of the invention by American. Knowing that it did not intend to employ plaintiff, American delivered the drawings and models to its subsidiary the defendant Bell Telephone Laboratories, Inc., for study, and Bell received the material knowing the conditions under which American had received it. The models and drawings were returned to plaintiff on September 18, 1933, but before this was done a study had been made by Bell of plaintiff's invention. Between that date in 1933 and August, 1947, all defendants conducted negotiations with plaintiff to buy the right to use his invention. While these negotiations " were in progress " all defendants made commercial use of plaintiff's invention derived from the knowledge which had been obtained by the study of his plans. The intent with which this was done was to " cheat and defraud " plaintiff. Plaintiff did not discover " the fraud and deceit " until 1948.

Plaintiff did not patent his invention and the general statement has sometimes been made that an inventor's right to his unpatented work depends on his ability " to guard successfully his secret " (*Rosenthal* v. *Goldstein*, 112 Misc. 606, 610) and that the property right in the idea depends " upon secrecy for its very existence " (*Sachs* v. *Cluett, Peabody & Co.*, 265 App. Div. 497, 502).

When the idea is published without patent or copyright or the product is produced, sold and opened to examination, anyone who has the ingenuity to utilize the idea, or to dissect the product and discover the secret may make free use of it without necessity to account to its originator.

But when the idea comes into the possession of one through special confidential disclosure by the inventor or under contractual or other legal restrictions, its disclosure may be the breach of a fiduciary trust which equity will restrain; and if there is a profitable use made of it, the fiduciary nature of the knowledge acquired may result either in a requirement to account or damage for the invasion of the property right against one who has thus acquired the knowledge and misused the confidence.

The nature of this relationship under New York law is examined in *Tabor* v. *Hoffman* (118 N. Y. 30). Plaintiff had invented and perfected a pump on which the patent had expired. Although he manufactured and sold the pump, the process by which he made it could not be discovered by inspection but depended on a knowledge of his patterns. Defendant hired the man, who was employed by plaintiff to repair the patterns, to make copies of the patterns. An injunction against the use of this information thus obtained was sustained. The disclosure to others of plaintiff's secret formula for " pearlizing " glass beads was held actionable in *Spiselman* v. *Rabinowitz* (270 App. Div. 548).

But a cause of action for the breach of a fiduciary duty to honor the restrictions under which the ideas embodied in the models and drawings were received by defendant American, which is essentially equitable in nature and could result either in an injunction or a declaration of rights or both; or a cause of action for damages for an invasion of a property right in the idea by putting it to a profitable or other commercial use with resulting damage, are both governed by the ten-year Statute of Limitations set up in section 53 of the Civil Practice Act. No other specific time limit for these causes is set up under article 2.

The fiduciary nature of such knowledge as the defendants American and Bell acquired is discussed in some of its aspects in *Sachs* v. *Cluett, Peabody & Co. (supra)* in which, however, no fiduciary relationship was found to exist. The ten-year statute applies generally in the event of actionable rights arising from fiduciary obligations (*Goldstein* v. *Tri-Continental Corp.,* 282 N. Y. 21, 30; *Druckerman* v. *Harbord,* 31 N. Y. S. 2d 867). There is a discussion of the special conditions calling up the shorter Statute of Limitations in certain cases of corporate fiduciaries in *Gottfried* v. *Gottfried* (269 App. Div. 413) and in *Myer* v. *Myer* (271 App. Div. 465).

An invasion of plaintiff's property right in his invention by the commercial utilization attributed to defendants with knowledge of the restricted conditions of its acquisition likewise would be governed by the ten-year Statute of Limitations.

We are of opinion that the Special Term was right in holding that the complaint does not plead an action " to procure a judgment on the ground of fraud " within subdivision 5 of section 48 of the Civil Practice Act, which provides that such a cause of action does not accrue until plaintiff has discovered the facts which constitute the fraud. The essence of the cause as here pleaded is that one defendant improperly disclosed plaintiff's ideas to another and all defendants used them commercially. This is actionable, but not fraud.

A utilization of the ideas while negotiations for settlement were going forward as here pleaded might be construed as a " fraud "; but the essence of the cause is the use, not the fact that there was use during negotiations; and hence under abundant authority in New York, the cause of action for " judgment on the ground of fraud " sought to be stated additionally in the pleading is not the gravamen of the action. (*Brick* v. *Cohn-Hall-Marx Co.,* 276 N. Y. 259; *Corash* v. *Texas Co.,* 264 App. Div. 292, 296; *Pitcher* v. *Sutton,* 238 App. Div. 291.)

The action was commenced September 13, 1951. The disclosure of the ideas embodied in plaintiff's models and drawings by American to Bell occurred between August 22, 1933, and September 18, 1933, and any legal remedy based on that disclosure is thus barred.

The utilization of plaintiff's ideas by all the defendants in dial telephones began September 18, 1933. As to all such actionable use which occurred before September 13, 1941, ten years before the action was commenced, the statute has likewise run.

The draftsman of the pleading was moving primarily in the direction of setting up the kind of cause of action in fraud which would not accrue until it was discovered; but the language he used also seems broad enough to be deemed to allege that there was some utilization of plaintiff's invention and ideas by defendants between September 13, 1941, and August, 1947.

This can be inferred, however, only by piecing together of attenuated language of the pleading in a very liberal view of what it purports to say. Thus approached, the language could be held to plead a time point of reference fixed at when American returned to plaintiff his drawings and models. This was " on or about September 18, 1933 ". That " subsequent thereto " (meaning after September 18, 1933) and " up to and including August, 1947 " there were negotiations between plaintiff and defendants to purchase the inventions. That " while " the conferences, negotiations, etc., " were in progress " the use was made of plaintiff's ideas.

But when defendants moved under rule 107 of the Rules of Civil Practice on very full affidavits to dismiss the complaint showing facts indicating the Statute of Limitations had run, plaintiff then had the obligation of showing that some part of the cause pleaded had accrued within ten years by establishing acts of utilization by defendants within that time. Nothing of this sort was shown in opposition to the motion, and the pleading itself casts almost no light on this subject.

We are of opinion, however, that if there was an actual utilization of plaintiff's ideas by the defendants within the ten-year period before September 13, 1951, the statute would not have run against the right to have appropriate relief for such a utilization within that period. Portions of actions barred by the Statute of Limitations which may be separable from other portions may be severed and dismissed (*Myer* v. *Myer, supra*; *Karo* v. *Lichtenstein,* 79 N. Y. S. 2d 34), and the remaining parts continued.

We assume for the purpose of dealing with this motion that in the absence of an adverse title the utilization of the property of another would be the subject of successive accounts or successive actions for damage and the time of accrual is not governed entirely by the original act of appropriation.

The question of the utilization of plaintiff's property within the ten-year period should be carefully examined before an official referee to determine whether the statute has run (Rules Civ. Prac., rule 108).

The order appealed from should be modified, with $10 costs, by reversing so much thereof as dismissed the cause or causes of action purported to have accrued after September 13, 1941, and should be otherwise affirmed. The order herein shall direct that the issues of fact as to the time of accrual of the portion of the cause of action not now dismissed be referred to an official referee in pursuance of rule 108 to hear and report to the Special Term and that upon such report the motion to dismiss such remaining portion of the cause of action based on the bar of the Statute of Limitations be determined by the Special Term as the facts may then appear.

FOSTER, P. J., BREWSTER and COON, JJ., concur; HEFFERNAN, J., taking no part.

Order appealed from modified, on the law and facts, with $10 costs, by reversing so much thereof as dismissed the cause or causes of action purported to have accrued after September 13, 1941, and otherwise affirmed. The order herein shall direct that the issue of fact as to the time of accrual of the portion of the cause of action not now dismissed be referred to an official referee in pursuance of rule 108 to hear and report to the Special Term and that upon such report the motion to dismiss such remaining portion of the cause of action based on the bar of the Statute of Limitations be determined by the Special Term as the facts may then appear. [See 281 App. Div. 929.]