Jerome H. **LEMELSON**, Plaintiff,

v.

**CAROLINA ENTERPRISES, INC.**, Defendant.

No. 81 Civ. 6434.

United States District Court, S. D. New York.

June 22, 1982.

Arthur T. Fattibene, New York City, for plaintiff.

Kirschstein, Kirschstein, Ottinger & Cobrin, P. C. by Peter T. Cobrin, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

This is an action for patent infringement, 35 U.S.C. §§ 281 et seq., and misappropriation of trade secrets under New York common law.[1] Jurisdiction lies under 28 U.S.C. §§ 1331, 1332 and 1338. Defendant moved for summary judgment: 1) dismissing the first cause of action (patent infringement) on the ground that it is barred by laches; and 2) dismissing the second cause of action (misappropriation of trade secrets) on the grounds that it is barred by the New York Statute of Limitations, N.Y. CPLR § 214(3) (McKinney Supp. 1980–81), that it is barred by laches, that the protectible ideas of

plaintiff were publicized by plaintiff in his patent application, thereby barring any recovery for use of his ideas, and that any other disclosures to defendant did not constitute trade secrets, as a matter of law. Plaintiff cross-moved for partial summary judgment declaring that defendant infringed plaintiff's patent.

By stipulation of the parties, all pretrial discovery has been limited to matters relevant to the affirmative defenses of laches and Statute of Limitations. The Court therefore ordered that resolution of those parts of defendant's motion challenging the merits of plaintiff's patent and trade secret claims, and the entirety of plaintiff's motion, be adjourned pending its determination of the defenses in bar. A discussion of those defenses follows.

## DISCUSSION

A party moving for summary judgment pursuant to Fed.R.Civ.P. 56 bears the considerable burden of demonstrating the absence of disputed material issues of fact by proof which would be admissible at trial.[2] The Court must "resolve all ambiguities and draw all reasonable inferences against the moving party."[3] As our Court of Appeals has explained:

"[T]he responsibility of the district judge on a motion for summary judgment is merely to determine whether there are issues to be tried, rather than to try the issues himself via affidavits."

*American International Group, Inc. v. London American International Corp. Ltd.,* 664 F.2d 348, 351 (2d Cir. 1981), *quoting Jaroslawicz v. Seedman,* 528 F.2d 727, 731 (2d Cir. 1975).[4]

---

1. Although not expressly stipulated by the parties, they apparently agree that New York law applies to the non-federal claims. Plaintiff is a New Jersey citizen. Defendant is a Delaware corporation doing business in New York.

2. *See Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185, 188 (2d Cir. 1978); *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317 (2d Cir. 1975).

3. *American Internat'l Group, Inc. v. London Am. Internat'l Corp. Ltd.,* 664 F.2d 348, 351 (2d Cir. 1981).

4. The Court in *American International* also reiterated the rule that if "the party opposing summary judgment 'generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate.'" 664 F.2d at 351, *quoting Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444–45 (2d Cir. 1980).

On the other hand, the Second Circuit has recently confirmed the principles that:

> [P]roperly employed, summary judgment is a useful device for unmasking frivolous claims and putting a swift end to meritless litigation. [citations] Thus, the mere possibility that a factual dispute *may* exist, without more, is not sufficient to overcome a convincing presentation by the moving party. [citation] The litigant opposing summary judgment, therefore, "may not rest upon mere conclusory allegations or denials" as a vehicle for obtaining a trial. [citation] Rather, he must bring to the district court's attention some affirmative indication that his version of relevant events is not fanciful.

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). Under Rule 56, a party opposing summary judgment cannot rely on his pleadings alone to raise a genuine issue of fact.[5] On the contrary, summary judgment is a device for piercing the pleadings to determine whether there are genuine issues to be tried.[6]

In the following sections, the Court will analyze, first, defendant's motion with respect to the claim for patent infringement and, second, the claim for misappropriation of trade secrets. The analysis will be guided by the principles enunciated above.

---

**5.** *Accord Gatling v. Atlantic Richfield Co.*, 577 F.2d 185, 187–88 (2d Cir. 1978). Thus, the statement by plaintiff in his Memorandum in Opposition at 9, that "allegations stated by Plaintiff in his complaint are to be treated as admitted," is patently in error.

**6.** *See, e.g., Dressler v. MV Sandpiper*, 331 F.2d 130, 132 (2d Cir. 1964). Plaintiff has suggested that "the defense of laches is inherently a question of fact," Memorandum in Opposition at 11, 16, such that summary judgment is inappropriate *per se* in this case. This position is belied by the result in *Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037 (2d Cir. 1980). *See also Ace Hardware Co., Inc. v. Ace Hardware Corp.*, 532 F.Supp. 770, 773 n.8 (N.D.N.Y.1982).

**7.** Attached to the affidavit of Peter T. Cobrin, Esq., counsel for defendant, sworn to on November 20, 1981 ("Cobrin Aff."), as Exhibit B.

**8.** Attached to the affidavit of Arthur T. Fattibene, Esq., counsel for plaintiff, sworn to on February 6, 1982 ("Fattibene Aff."), as Exhibit 1.

---

## I.

## PATENT INFRINGEMENT

### A. *Statement of Facts*

On the basis of the affidavits of Jerome H. Lemelson, sworn to on January 29, 1982 ("Lemelson Aff.") and Mason Benson, sworn to on November 25, 1981 ("Benson Aff."), the reply affidavit of Mason Benson, sworn to on February 17, 1982 ("Benson Reply Aff."), the depositions of Jerome H. Lemelson, dated November 13, 1981 ("Lemelson Dep."),[7] and Mason Benson, dated November 13, 1981 ("Benson Dep."),[8] plaintiff's exhibits and the statements submitted pursuant to Rule 3(g),[9] the Court finds as follows:

1. Plaintiff is a professional inventor whose primary source of income derives from the licensing of his ideas to manufacturers. (Lemelson Aff., ¶¶ 2, 3)

2. On June 20, 1961, plaintiff received Letters Patent No. 2,988,848 for one of his inventions (the "patent in suit").[10]

3. The patent in suit covers a "novel sound producing bellows structure which is especially adapted for use in providing noise making toys."[11] The device (the horn) may be placed on a ride-on toy such that the axis

---

**9.** Rule 3(g) of the Civil Rules of the District Court for the Southern District of New York provides in part:

> Upon any motion for summary judgment ..., there shall be annexed to the notice of motion a separate, short, concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried....
>
> The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried.

**10.** The Letters Patent is attached to the Fattibene Aff. as Exhibit 2.

**11.** As explained in the patent application, plaintiff's bellows horn "eliminates the need for a spring mechanism [and] is of unitary construction thereby considerably simplifying the fabrication of the unit ...." *Id.*

of compression of the bellows is aligned with and molded to the axis of the steering column of the particular toy. (Lemelson Aff., ¶ 10)

4. Defendant Carolina Enterprises, Inc. is a toy manufacturer and distributor.[12] One of its affiliates, up until 1978, was a company called Empire Plastic Corporation ("Empire"), which acted as sales agent for Carolina. (Benson Aff., ¶ 4)

5. Bernard Schiff acted as President of Empire until 1976. Since that time, he has officially remained as a consultant to Carolina. However, he has not been active in that capacity over the intervening years. (Benson Aff., ¶ 4; Benson Dep., pp. 6–7)

6. Joseph Schiff was Chairman of the Board of Empire through 1972. Since that date he has had no dealings with Empire or Carolina. (Benson Aff., ¶ 4)

7. Mason Benson first joined Carolina in November 1972. He served for six years as Executive Vice President. From 1978 through 1979, he was President and Chief Operating Officer of the company. Since that time, he has served as President and Chief Executive. (Benson Aff., ¶¶ 1, 2)

8. Due to his position with the company over the past decade, Benson has been involved in "virtually every business decision of the company," including design of toys and day-to-day management. (Benson Aff., ¶ 3)

9. On July 14, 1965, plaintiff, accompanied by his counsel, Mr. Fattibene, went to a Toy Fair where Empire had a showroom. He went into the showroom because he believed the company was "a likely candidate" with which to strike a deal. (Lemelson Aff., ¶ 4; Lemelson Dep., pp. 5, 7, 42)

10. At that time, plaintiff and Mr. Fattibene met with Bernard and Joseph Schiff—the only officers/representatives of Empire in the showroom.[13] (Lemelson Dep., p. 16) Plaintiff showed the Schiffs his Letters Patent and several pages of drawings consisting of specific applications of his noise-making device.[14] (Lemelson Aff., ¶¶ 5, 6, 9; Lemelson Dep., p. 7) Each page was marked "Confidential" "Patent Pending," and indicated that it had been shown to both of the Schiffs.

11. Plaintiff's purpose in showing these drawings to the Schiffs was to interest them in entering into a licensing agreement whereby Empire would utilize the patented noise-maker on its toys and pay plaintiff a royalty. (Lemelson Dep., pp. 7, 26)

12. Plaintiff recalls that his offer of a license was turned down in July 1965. (Lemelson Dep., p. 7)

13. On May 19, 1966, Mr. Fattibene addressed a letter to Empire on behalf of his client. That letter stated, in relevant part:

This letter is to inquire as to whether or not your company would be interested in licensing the subject matter covered by the [U.S. Patent No. 2,988,848] for use in toys manufactured and/or sold by your company. A copy of this patent is enclosed for your convenience.

You will notice that this patent is directed to an integrally molded bellows construction incorporating therein a noise making device which is actuated upon the compression and expansion of the associated bellows structure.

(Plaintiff's Exhibit 17)

14. No one from Empire ever responded to that letter.

15. Sometime in 1966, plaintiff discovered in a catalogue an Empire tricycle with

---

**12.** Over the period of time relevant to this suit, defendant has assumed various names. (Benson Dep., p. 6) For the sake of simplicity, the name "Carolina" will be employed throughout this opinion to refer both to the defendant and to its predecessors/affiliates.

**13.** Although plaintiff did not know the exact position held by the Schiffs, he knew they were the principals of Empire. (Lemelson Aff., ¶ 4)

**14.** The drawings—plaintiff's Exhibits 12, 13, 14 and 15—are attached to the Lemelson Aff. as exhibits. The page relevant to this lawsuit depicts a tug boat on wheels, with a bellows-type beeper directly behind the pilot's chambers, in the position of a smokestack; a three-wheeled tractor, with bellows horn molded on to the steering shaft; and a fire truck with a noise-making device directly behind the cab.

bellows horn on the steering wheel which he believed infringed his patent. (Lemelson Aff., ¶ 12; Lemelson Dep., pp. 18, 25)

16. In October 1966, Mr. Fattibene sent the following letter to Bernard Schiff:

I am writing this letter in behalf of Mr. Jerome H. Lemelson, owner of the above-identified U. S. patent, with the hope that you may find this patent of sufficient interest to seek a license thereunder and thereby avoid any possible claim of infringement.

\* \* \* \* \* \*

At this writing I can tell you that we have licensed a number of companies to manufacture various integrally molded bellows type noisemakers under this patent. The latest license granted was to Gerber Products Company and its licensee.

\* \* \* \* \* \*

Also, I have been advised by Jerry Lemelson that he at one time disclosed to you a number of various designs in which this structure could be successfully utilized. Under the circumstances, we would appreciate hearing from you as to whether or not your company desires to take a license under this patent.

\* \* \* \* \* \*

In the past Mr. Lemelson has diligently policed and prosecuted known infringers of this structure. It is therefore urged, in order to avoid any possible misunderstandings with respect to this matter, that your company seriously consider taking a license from Mr. Lemelson if it desires to manufacture and/or sell integrally molded bellows type noisemakers of the type disclosed in the enclosed patent and covered by the claims thereof.

(Plaintiff's Exhibit 18)

17. Defendant did not send any reply to this communication.

18. Plaintiff met with Mason Benson sometime in the early 1970's. He did not mention the patent in suit at that time. Instead, he showed Benson some of his new ideas. (Lemelson Dep., pp. 15, 26) This was the last contact he had with *any* representative of Carolina. (Lemelson Dep., p. 39)

19. Since 1966, plaintiff has not seen the particular tricycle that prompted the October 1966 letter to Bernard Schiff.[15] (Lemelson Aff., ¶ 17)

20. Plaintiff continued to visit Carolina/Empire showrooms for some time after 1965, but discontinued these visits in the mid-1970's. (Lemelson Dep., p. 6)

21. From 1966 to July 1981, plaintiff did not see any Carolina toys which he believed violated his rights under the patent in issue. (Lemelson Dep., p. 27)

22. Apart from the letter sent by his counsel in October 1966, plaintiff has not disclosed or discussed the patent in suit with Empire or its successors since 1965. (Lemelson Dep., p. 15)

23. Plaintiff instituted 9 lawsuits from 1964 to 1976 in order to protect the patent in suit. (Lemelson Aff., ¶ 21) The last of these, *Lemelson v. Bulgarelli Associates, Inc.*, No. 76–3769 (LWP), went to trial. Judge Pierce of this court upheld the validity of the patent in an opinion issued September 6, 1979. 207 U.S.P.Q. 598 (S.D.N.Y. 1979).

24. None of these lawsuits involved the defendant or its affiliates or predecessors.

25. Aside from the oblique reference in the October '66 letter to Bernard Schiff from Mr. Fattibene, *supra* # 16, plaintiff did not give defendant actual notice of the pending litigation. After that 1966 letter, there is no evidence of any communication between plaintiff and defendant concerning the patent in suit.[16]

---

**15.** The Court notes that plaintiff cannot now recall whether he checked after that year to see if Carolina was still selling the toy. (Lemelson Dep., p. 49)

**16.** Defendant caused a search to be made of its records for all notes and exchanges between itself and Lemelson. Nothing was found, including the two 1966 letters from Mr. Fattibene. (Benson Dep., p. 18)

26. In the early 1970's, plaintiff had a discussion with a senior partner in the law firm which represents the defendant. During a "chance meeting" at the U.S. Patent Office, plaintiff "updated Mr. Ottinger as to the status of [his] litigations relating to" the patent in issue. Thus, Mr. Ottinger had personal knowledge of the various enforcement actions brought by plaintiff. (Lemelson Aff., ¶¶ 25, 26)

27. According to the catalogues of defendant, from 1965 to 1981—with the exception of 1975 and 1976—Carolina has "continuously sold molded bellows squeakers located at the hub of the steering wheel of a ride-on toy" with the bellows axis in line with the steering column axis. (Benson Reply Aff., ¶ 2)

28. In 1973 or 1974, defendant began selling the "Tot-About-Trike" by agreement with a Japanese firm. (Benson Dep., pp. 15, 25)

29. Plaintiff admits that the horn on that toy does not violate his rights under the patent in suit. (Lemelson Dep., p. 41)

30. In or about 1977, defendant began producing the "Tot-About-Car" pursuant to a licensing agreement with Harbert S.P.A., an Italian company.[17] (Benson Dep., p. 11; Fattibene Aff., Ex. 18) It is a ride-on toy with a bellows-type horn.

31. Plaintiff's patent expired on June 20, 1978.

32. In July 1981, plaintiff became aware that Carolina was selling the Tot-About-Car. (Lemelson Dep., p. 27) He believes that the horn infringes the patent in suit. (Complaint, ¶ 15)

33. No other toy marketed or manufactured by the defendant is claimed by plaintiff to have infringed his patent before its expiration.

34. This action was commenced by the filing of the complaint on October 20, 1981 (Fed.R.Civ.P. 3)

## B. Conclusions of Law

The time limitation on suits brought for patent infringement is codified at 35 U.S.C. § 286. That section states in part:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

By its terms, the statute does not bar infringement actions, but merely limits recovery to the six years preceding any damage action brought.

▮ Courts therefore look to the traditional equitable doctrine of laches to determine the timeliness of actions alleging patent infringement, according to the particular facts presented in each case.[18] The doctrine requires that defendant demonstrate: 1) plaintiff has delayed unreasonably and inexcusably in prosecuting his rights; and 2) plaintiff's delay has resulted in material prejudice to the defendant.[19] However, the burden of demonstrating these elements is shifted where the delay in instituting suit exceeds the six-year time limitation prescribed by 35 U.S.C. § 286. Under such circumstances, the courts presume unreasonableness and prejudice to the defendant, and require plaintiff to come forward with evidence to rebut the presumptions.[20]

17. There is some confusion as to when Carolina commenced sales of the Tot-About-Car. The Court has assumed the later date, which is more favorable to the plaintiff. *Compare* Benson Dep., pp. 28, 30.

18. *Accord Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1325 (5th Cir. 1980); *TWM Mfg. Co., Inc. v. Dura Corp.,* 592 F.2d 346, 348 (6th Cir. 1979).

19. *See, e.g., Potter Instrument Co., Inc. v. Storage Technology,* 641 F.2d 190, 191 (4th Cir.

1981); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.,* 630 F.2d 1155, 1159 (6th Cir. 1980); *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1326 (5th Cir. 1980); *TWM Mfg. Co., Inc. v. Dura Corp.,* 592 F.2d 346, 349 (6th Cir. 1979); *Advanced Hydraulics, Inc. v. Otis Elevator Co.,* 525 F.2d 477, 479 (7th Cir.), *cert. denied,* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975).

20. *See* cases cited in note 19, *supra.*

In the present case, an alleged infringing tricycle was marketed by defendant sometime before the fall of 1966. Production of a second and third toy—and the Tot-About-Trike and the Tot-About-Car—commenced during the years 1973–75. As to any claim based on the marketing of those toys prior to October 1975, plaintiff bears the burden of excusing his failure to bring this suit before October 1981 or of rebutting the presumption of prejudice to the defendant. As to claims based on sales of the tricycles or car after October 1975, the burden rests with defendant to demonstrate both elements of unreasonable delay and prejudice.[21]

1. *Claims between 1966–1975*

As stated above, the Court must presume both elements of the laches defense for any claims prior to October 20, 1975. Plaintiff has suggested, in rebuttal, a number of factual and legal arguments to support his opposition to the motion for summary judgment.

a) *Delay*

■ Plaintiff first argues that his delay in commencing this action was justified because defendant discontinued production of the particular toy noted by him in defendant's 1966 catalogue. "Insofar as Plaintiff knew, defendant had abated the infringement originally noted .... " Plaintiff's Memorandum in Opposition at 15.

This argument is unpersuasive, even if factually supported, in light of Mr. Benson's uncontradicted affirmation that defendant has sold ride-on toys with bellows horns on the steering shaft almost continuously since 1965. There is no evidence that defendant concealed its production or sales of the Tot-Along-Trike or Car, or otherwise misled plaintiff as to its activities. Thus, plaintiff's lack of knowledge does not constitute a legally sufficient "excuse" for his failure to bring a timely action. *See Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616

F.2d 1315, 1326 (5th Cir. 1980) ("To determine the length of plaintiff's delay, the Court must look not to the date on which the patent issued but rather to the time at which the plaintiff knew or, in the exercise of reasonable diligence, should have known of the defendant's alleged infringing action."); *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 481 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 49 L.Ed.2d 99 (1975) (plaintiff failed for five years to follow up on its threat of prompt, vigorous enforcement of its rights under the patent in suit).

In contrast to this case are the facts presented in *Carl Zeiss Stiftung v. Veb Carl Zeiss Jena*, 433 F.2d 686 (2d Cir. 1970). There, the Court of Appeals affirmed the district court's finding that plaintiffs had neither slept on their rights prior to instituting an action for trademark infringement, nor lulled the defendants into a false sense of security. The record disclosed continuing, yearly exchanges of correspondence in addition to negotiations regarding the possible licensing of defendants under the trademark. In addition, the trial court found that, from 1955 to 1960, the plaintiffs were not in a position to sue for infringement of the trademarks. Therefore, the delay was excusable.

Here, on the other hand, the undisputed facts show that defendant rejected the attempts of plaintiff to interest it in the patented device, and ignored the letter of October 1966. There was no further contact between the parties, and nothing to prevent the plaintiff, who already was engaged in litigation in New York, from filing a timely complaint. *Cf. Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1041–42 (2d Cir. 1980) (plaintiff "should have taken some affirmative action to protect its rights against innocent parties who relied upon its prior acquiescence.").

The second excuse advanced by plaintiff is that he was engaged in other litigation throughout the years 1966–1978. *See*

---

**21.** Plaintiff, of course, cannot recover damages for any alleged infringement after the expiration date of his patent on June 20, 1978.

Plaintiff's Memorandum in Opposition at 6–9, 14:

> Litigation on this patent has been actively conducted in an almost uninterrupted manner from 1963 to present. The Court has only recently finally declared the patent to be valid and infringed. Defendant, when first advised of its infringement, was told that Plaintiff was diligently policing and prosecuting his patent against known infringers. Pl. Ex. 18. When this letter, Ex. 18, was sent to Defendant, Plaintiff had already instituted at least five separate actions. Thus, Defendant did have actual notice of Plaintiff's sincere and persistent will to enforce his patent rights.

The relevance of this factor, *i.e.*, the pendency of litigation surrounding the patent in suit, in determining a claim of laches, when it is apparent that there has been no actual notice of the specific lawsuits to the defendant, is the subject of current dispute among the courts. *See Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315, 1327 (5th Cir. 1980) (and cases cited therein). In *Studiengesellschaft*, the Fifth Circuit Court of Appeals summarized the recent case law as follows:

> More recent cases, however, have rejected the idea that litigation of the patent's validity in another suit is per se sufficient justification for the delay in instituting the current litigation.

*Id.* at 1327. *Accord Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d 1155, 1163 (6th Cir. 1980); *TWM Manufacturing Co., Inc. v. Dura Corp.*, 592 F.2d 346, 349 (6th Cir. 1979); *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 481 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975); *American Home Products Corp. v. Lockwood Manufacturing Co.*, 483 F.2d 1120, 1123 (6th Cir. 1973), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 111 (1974); *Eastman Kodak Co. v. GAF Corp.*, 195 U.S. P.Q. 644, 648 (S.D.N.Y.1977).

While the Second Circuit has not recently ruled on this issue, the reasoning articulated by the Fifth, Sixth and Seventh Circuit Courts of Appeal is persuasive. Those courts have distinguished the situation where a defendant seeks to *estop* a plaintiff from past or prospective enforcement of his patent from the situation where a laches defense is asserted solely to bar an action for damages for past infringement.[22] In the former instance, a defendant must prove an abandonment by plaintiff of his patent rights as well as defendant's reliance on that abandonment. Clearly, abandonment cannot be demonstrated in the face of pending enforcement proceedings, whether or not the defendant is aware of those proceedings.

██ On the other hand, where defendant has charged a plaintiff with laches, the issues of abandonment and reliance are not present. Rather, the primary question is whether the pendency of other, unrelated litigation should toll the laches period with respect to the particular defendant. Accordingly, the modern view is that plaintiff's laches in one case will not be excused merely because other cases have been diligently prosecuted. Rather:

> [T]o avoid the presumption of injury to the alleged infringer after a delay of six years in enforcing a patent against the alleged infringer, the patentee must give the alleged infringer, *within six years of learning about the infringement*, notice of other pending litigation which delays enforcement of the patent against the alleged infringer *and of an intent to sue when the other litigation is concluded.* [emphasis added]

*Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.*, 630 F.2d at 1163.

In the present case, plaintiff warned the defendant fifteen years ago that he had "diligently policed known infringers of" the patent in suit. Since 1966, plaintiff has had

---

22. *E.g., Potter Instrument Co., Inc. v. Storage Technology*, 641 F.2d 190, 192 (4th Cir. 1981); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1159–60 (6th Cir. 1980); *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir.), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975).

no communication with the defendant's representatives with respect to that patent, including pending litigation.[23] There is no allegation that plaintiff ever indicated to defendant that its various lawsuits were causing him to delay filing a complaint against Carolina, or that he intended to sue the defendant as soon as those matters were concluded. Following the rule set out above, which this Court adopts, plaintiff's failure to file a timely lawsuit for infringement against this defendant cannot be excused on the basis of his involvement with other legal actions.

In summary, plaintiff has not rebutted the presumption of unreasonable delay with respect to all claims prior to October 1975, even assuming the facts as alleged by him. Admittedly, plaintiff failed to inquire into defendant's toy production after 1967, or otherwise to exercise reasonable diligence in policing his rights with respect to the patent in suit. In addition, plaintiff did not alert the defendant at any time of his intention to commence suit after resolution of then-pending litigation.[24] Finally, plaintiff has not come forward with a scintilla of admissible evidence that defendant engaged in the sort of egregious conduct that would excuse the inordinate delay in this case.[25]

b) *Prejudice*

■ To rebut the presumption of prejudice to defendant, plaintiff has raised several contentions. First, he asserts that "defendant elected to rely on the advice of its counsel, rather than acknowledge Plaintiff's patent and proprietary rights." Plaintiff's Memorandum in Opposition at 5. The important fact, according to plaintiff, is that "Defendant relied on its counsel's advice, rather than on Plaintiff's alleged delay." *Id.* at 12–13.

Assuming that defendant received Mr. Fattibene's letter of October 1966, there is still insufficient evidence to rebut the presumption of prejudice to defendant resulting from the fifteen year interlude between that letter and the commencement of the present lawsuit.[26] First, there is no affida-

**23.** Plaintiff argues that constructive notice was provided to defendant because the law firm which represents the company had knowledge of the various actions during the early 1970's, citing *USM Corp. v. SPS Technologies, Inc.*, 211 U.S.P.Q. 112, 514 F.Supp. 213 (N.D.Ill. 1981). That case involved a patent application, drawn up by counsel, to the U. S. Patent Office which contained material omissions or misstatements. It is factually distinguishable. Furthermore, the Court rejects the notion that informal notice of pending litigation to a law firm constitutes notice to an alleged infringer under the circumstances of this case.

**24.** *See generally Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828, 831–32 (N.D.Ill.1974), *aff'd*, 513 F.2d 1130 (6th Cir. 1975).

**25.** Plaintiff has cited *TWM Mfg. Co., Inc. v. Dura Corp.*, 592 F.2d 346 (6th Cir. 1979), and contends that "an issue is raised as to whether or not the Defendant is before the Court with 'clean hands' so as to avail itself of a defense of laches." Plaintiff's Memorandum in Opposition at 9. As noted in the text, there is no evidence of wilful misconduct or fraud on the part of defendant over the past decade since Mr. Benson has been a company officer, or prior to that time. *E.g., Jensen v. Western Irrigation and Mfg., Inc.*, 650 F.2d 165, 168 (9th Cir. 1980); *Technitrol, Inc. v. Memorex Corp.*, 376 F.Supp. 828, 832 (N.D.Ill.1974), *aff'd*, 513 F.2d 1130 (6th Cir. 1975). Furthermore, the

*TWM* case is easily distinguished. There, the court found sufficient evidence that the defendant has sponsored a third-party action challenging the plaintiff's patent in order to harass the latter and to hold the validity of the patent in question, thereby enabling it to develop and sell its own infringing product.

**26.** *Accord Esco Lighting Co., Inc. v. Lighting Services, Inc.*, 178 U.S.P.Q. 191 (S.D.N.Y.1973), citing *Baker Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008 (7th Cir. 1970). Plaintiff's sole authority for this argument is *Jamesbury Corp. v. Litton Indus. Products, Inc.*, 195 U.S.P.Q. 65, 427 F.Supp. 756 (D.Ct.1977). In that case, defendant moved to dismiss on the grounds of laches and estoppel. While discussing the *estoppel* defense, the court distinguished the elements necessary to demonstrate laches, writing:

Estoppel, however, incorporates an additional element of reliance on the plaintiff's inaction. Moreover, ... estoppel would act as a total bar to enforcement of the validity of the patent.

*Id.* at 68, 427 F.Supp. 756. It then went on to note that plaintiff had made a colorable claim "that defendant relied on an opinion of counsel as to noninfringement, not on any delay by plaintiff, in increasing operations." Because of this factual issue—material to the defendant's reliance—the court denied summary judgment

vit or deposition testimony from a representative of Empire attesting to the action taken by the company after receiving the ambiguous accusation from Mr. Fattibene of infringement of the patent in suit and the veiled threat of litigation over that patent.[27] Thus, there is no evidence that prior to August 1981 defendant ever sought the advice of counsel with respect to the 1966 letter. Second, Benson testified that, since his joining the company, he has had no contact with plaintiff concerning the patent in suit. Therefore, there is no basis for a finding that defendant sought patent infringement advice from an attorney with respect to the Tot-About-Trike or the Tot-About-Car. Neither can it be found that defendant continued production of those toys in reliance on legal advice rather than on the failure of plaintiff to bring an enforcement action. *Compare Watkins v. Northwestern Ohio Tractor Pullers*, 630 F.2d 1155, 1164 (6th Cir. 1980) (summary judgment was improper where plaintiff had not had an opportunity to rebut the presumption of prejudice) *with Esco Lighting Co., Inc. v. Lighting Services, Inc.*, 178 U.S. P.Q. 191, 442 F.Supp. 266 (S.D.N.Y.1973) (plaintiffs offered "no real proof" in support of contention that defendant relied on its own counsel rather than on their silence).

Plaintiff's second rebuttal theory is that, with respect to the Tot-About-Trike, 35 U.S.C. § 286 "would bar Plaintiff the right to recover for any sales of this item. Actually, Defendant was benefitted by the sales thereof, and not prejudiced in any manner." Plaintiff's Memorandum in Opposition at 12.

This argument is spurious. First, the fact that the six-year time limitation in § 286 would preclude plaintiff from obtaining relief based on sales of the Tot-About-Trike, which were discontinued prior to 1975, simply reinforces defendant's argument that the action itself should be barred under the doctrine of laches. Second, it is not necessary that a defendant lose money on a product to be prejudiced by a patent holder's failure to institute a timely action. Such a requirement would eviscerate the laches defense, since patent holders normally do not commence suits for an accounting of profits under the patent laws where there has been no profit to the alleged infringer.

The third argument advanced by plaintiff concerns the Tot-About-Car. Plaintiff observes that the toy was licensed from an Italian manufacturer and concludes:

> [I]t cannot be claimed by Defendant that it expended its own time, money and effort to develop this item, when it has been licensed from another.

Plaintiff's Memorandum in Opposition at 12. The Court notes that this contention was first formulated in the brief prepared by counsel for plaintiff and is not evidence admissible at trial. Furthermore, the record is void of any evidence to support the suggestion that defendant incurred no costs in obtaining the license for and marketing the Tot-About-Car.[28] Plaintiff's reliance on that suggestion, therefore, is purely fanciful. *Cf. Jensen v. Western Irrigation and Manufacturing, Inc.*, 650 F.2d 165, 168 (9th Cir. 1980) (no evidence provided by plaintiff

on the defense of estoppel. Clearly, the *Jamesbury* case does not control here, where the issue is laches.

27. Ordinarily this information would be within the exclusive control and knowledge of the defendant, and the burden would be on it to provide such information to plaintiff. However, Benson testified that records going back to 1966 have been destroyed in the course of business. He further testified that the Schiffs are no longer employed by, under the control of, or in contact with Carolina. Therefore, plaintiff, who knew the Empire officers, had equal access to the relevant information.

28. On the other hand, Mason Benson, in his Reply Aff. ¶ 3, avers that the company sold over $1,400,000 of the particular items from 1975–1978, the relevant period for the patent infringement damage claims. He further testified that, if he had been notified of plaintiff's infringement claims, he would have sought the advice of counsel and could have substituted for the allegedly infringing horn, "since there were many horns of various types commercially available . . . ." (Benson Aff., ¶ 6)

that defendant's volume of business did not justify commencing an action at an earlier time).

Plaintiff's final theory is that:

Where Defendant admits that the use of Plaintiff's patented construction would not affect Defendant's sale (Benson Deposition, page 58) and where Defendant could readily avoid infringement, Plaintiff has demonstrated and rebutted any inference of prejudice.

Plaintiff's Memorandum in Opposition at 13. Plaintiff reasons from the statement of Mason Benson during his deposition—that Carolina could have interchanged horns on the Tot-About-Car—that defendant's sales were not dependent upon the allegedly infringing noise-making device. Apparently, he then concludes that prejudice, if any, to defendant was caused by defendant's own failure to switch the horn device.

The fallacy of this argument is obvious. As the defendant explains:

The fact that defendant could have used a different type of squeaker illustrates prejudice. As defendant's President states, if he had known of plaintiff's alleged rights and believed those rights were infringed, he would have used a different type of squeaker. The fact that he did not create exposure of damages and illustrates the prejudice which defendant has incurred.

Defendant's Reply Memorandum at 19.

To summarize, the Court has examined each claim countering the presumption of prejudice resulting from plaintiff's failure to initiate this lawsuit within six years of his discovery of the alleged infringement. None of those claims is sufficient, as a matter of law, to rebut the presumption.

## 2. *Claims between 1975–1978*

▇▇▇ Plaintiff correctly points out that, with respect to production of the Tot-About-Car after October 1975, "there can be no presumption of prejudice ...." Plaintiff's Memorandum in Opposition at 12. He further emphasizes that the record evidence points to 1977 as the year in which the defendant concluded its licensing agreement with the Italian manufacturer of the Tot-About-Car. Thus, it must be assumed that this part of the present action was commenced approximately four to five years after defendant began to sell that allegedly infringing item, and that the burden lies on the defendant to demonstrate both elements of the laches defense.[29]

### a) *Delay*

This action was commenced more than two years after plaintiff's patent was held to be valid, more than three years after the patent in suit expired, and four or more years after defendant commenced selling the Tot-About-Car. Defendant's activities have been open and continuous over the years 1966–1981. According to the evidence in the record, Carolina has not attempted to hide from or deceive plaintiff in any manner with respect to the patented noise-making device.

Plaintiff, on the other hand, had notice fifteen years ago that defendant was selling a child's ride-on toy with bellows-type horn molded to the steering wheel. By his own admission, plaintiff continued to visit defendant's showroom until the mid 1970's, and spoke with Benson in the early 1970's concerning some of his other ideas. Furthermore, plaintiff and his attorney are well acquainted with the toy market[30] and patent litigation. Starting in 1963, plaintiff commenced nine infringement actions (seven in New York) involving the patent in suit.

Under the particular circumstances of this case, including the conduct of plaintiff

---

**29.** Although the six-year statutory period for damages is used by the courts as a frame of reference, "laches may also bar a suit brought within the period specified by the corresponding statute of limitations." *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1326 (5th Cir. 1980). *See also Whitman v.*

*Walt Disney Productions, Inc.,* 263 F.2d 229, 232 (9th Cir. 1958); *Siemens Aktiengesellschaft v. Beltone Electronics Corp.,* 381 F.Supp. 57, 63 (N.D.Ill.1974).

**30.** Lemelson Dep., 48–50.

since the case was filed, the Court finds that plaintiff has not diligently protected his rights *viz.* this defendant. The delay of four or more years since plaintiff was aware or should have been aware of defendant's alleged infringing actions is neither explained nor excused by the uncontroverted facts in the record. *See* Section 1(a), *supra.*

b) *Prejudice*

A variety of factors has been recognized by the courts in considering the issue of prejudice to the defendant, including: the fact that important witnesses have died or are otherwise unavailable; the dulling of witness' memories; the destruction or loss of relevant records; and that defendant has made investments and outlays in connection with the operation of its business. *See Jensen v. Western Irrigation and Manufacturing, Inc.,* 650 F.2d 165, 169 (9th Cir. 1980) (prejudice if defendant forced to dismantle operations after an extended delay); *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315, 1326 (5th Cir. 1980). Particularly relevant to this case is the observation by Judge Learned Hand that:

> Each year as it passes inevitably builds up a belief, if nothing has been done, that the patentee does not suppose his rights invaded, and, if the time be long enough, the infringer garners the harvest of even the earliest of the 6 years to which recovery is in any event limited, with just confidence that he will not be disturbed. To allow this reasonable inference to be upset, and his financial life perhaps to be gravely deranged, is thought to be incommensurate with the importance of the patentee's stale claims.

*Dwight & Lloyd Sintering Co., Inc. v. Greenawalt,* 27 F.2d 823, 827 (2d Cir. 1928).

Defendant here has produced affirmative proof of prejudice. Primarily, it emphasizes that it negotiated and has proceeded under a licensing agreement with a foreign manufacturer for the Tot-About-Car in return for royalties. According to the Benson affidavit, more than $1.4 million in sales took place from 1975–1978. Faced with plaintiff's total silence regarding the patent in suit since 1966, defendant continuously has marketed ride-on toys with bellows squeakers over the past fifteen years. It estimates sales from 1975–1981 to have been $4.6 million, if all the accused items are included. In addition, the company has developed a brand new toy—the Super Rig—which is equipped with a molded bellows horn. These facts demonstrate the type of "change of position which will support the defense of laches." *Siemens Aktiengesellschaft v. Beltone Electronics Corp.,* 381 F.Supp. 57, 63 (N.D.Ill.1974) (" 'The question of laches then assumes the aspect of plaintiff having stood by and having done nothing to protect its rights ... while the defendant was building up a business, which it thought was legitimate, and spending money in constructing a large plant.' ").

Plaintiff argues that the prejudice to defendant raises an issue of fact for which he is entitled to a trial. The Court disagrees. This case is not like that presented to the court in *Hoste v. Radio Corp. of America,* 654 F.2d 11 (6th Cir. 1981), where summary judgment was denied to the defendants who "filed no affidavits" and thereby left a record without *any* evidence of prejudice by reason of the plaintiff's delay. *Id.* at 12. And, unlike the plaintiff in *Watkins v. Northwestern Ohio Tractor Pullers, Inc.,* 630 F.2d 1155, 1164 (6th Cir. 1980), the plaintiff here has been given ample opportunity to provide some proof of its position.

Finally, the Court believes it more appropriate to this particular case that the Tot-About-Car be viewed, not in isolation, but in the context of defendant's actions since 1966. For:

> [l]aches is an equitable doctrine which depends on consideration of all the facts in the case. A finding of laches based on all the circumstances in the case is a matter within the trial court's discretion and will not be set aside unless an abuse of discretion has been shown. [Footnotes omitted]

*Watkins v. Northwestern Ohio Tractor Pullers, Inc.,* 630 F.2d 1155, 1163 (6th Cir. 1980).

See also Siemens Aktiengesellschaft v. Beltone Electronics Corp., 381 F.Supp. 57, 60 (N.D.Ill.1974) ("Decisions on the issue of laches ... are to be based upon the equities of the individual situations."). Based on its review of all the circumstances present in this case, the Court finds that defendant has sustained its burden of demonstrating prejudice resulting from the plaintiff's delay in suing for damages sustained during the period October 1975—June 1978.

## II.

## MISAPPROPRIATION OF TRADE SECRETS

### A. Statement of Facts

In addition to the facts itemized in Section I–A, supra, the Court finds or assumes the following:

1. Prior to the meeting between plaintiff and the Schiffs on July 14, 1965, plaintiff conceived of and designed a number of specific applications for utilizing the patent in suit. (Complaint, ¶ 23)

2. Several of those applications were disclosed by plaintiff in confidence to the Schiffs at the July 1965 meeting. (Lemelson Aff., ¶ 9; Lemelson Dep., pp. 7, 45)

3. In 1966, plaintiff discovered a ride-on toy marketed by defendant which he believes was misappropriated from the drawings he disclosed to the defendant in 1965.[31]

4. Plaintiff also believes that the Tot-Along-Car misappropriates his idea, i.e., the idea of placing his patented device on a ride-on toy as part of the steering column. (Lemelson Aff., ¶ 10)

31. Lemelson stated: "[A]n idea is sometimes very valuable to people, and I did have an idea, which I gave [the Schiffs] at the time, for using a squeezable noise-making device at the center of the steering wheel." (Lemelson Dep., p. 41)

32. Plaintiff contends that there is a "question of fact" as to whether the three year statute, N.Y. CPLR § 214(4) (injury to property), or the six year statute, N.Y. CPLR § 213(2) (implied contract), applies in this case. He contends that the allegations of the second cause of action are sufficient to support a claim of im-

### B. Conclusions of Law

Defendant has moved to dismiss the second cause of action on the grounds that it is barred by the Statute of Limitations and by plaintiff's laches. The Court need not consider the second ground for summary judgment, because it concludes that the misappropriation of trade secrets claim is barred under the New York Statute of Limitations.[32]

The applicable period of limitations is found in N.Y. CPLR § 214(4), which provides in part:

The following actions must be commenced within three years:

\* \* \* \* \* \*

4. an action to recover damages for an injury to property;

\* \* \* \* \* \*

Accord M & T Chemicals, Inc. v. International Business Machines Corp., 403 F.Supp. 1145 (S.D.N.Y.1975), aff'd, 542 F.2d 1165 (2d Cir.), cert. dismissed, 429 U.S. 1030, 97 S.Ct. 656, 50 L.Ed.2d 637 (1976). See also Sachs v. Cluett Peabody & Co., Inc., 265 App.Div. 497, 39 N.Y.S.2d 853, 856 (1st Dep't 1943), aff'd, 291 N.Y. 772, 53 N.E.2d 241 (1944) (an inventor has a property interest in his unpublished trade secrets). Thus, plaintiff's claims for relief under count two of his complaint must have been filed within three years of the time when the cause of action accrued.

Two questions are presented in connection with this affirmative defense: 1) When did the cause of action for misappropriation first accrue in favor of the plaintiff? 2) Does New York recognize a theory of continuing tort in the context of misappropriation of trade secrets? The first

plied contract (quantum meruit). Plaintiff's Memorandum in Opposition at 19.

All of the evidence marshalled so far refutes the implied contract theory of plaintiff's cause of action. In fact, plaintiff has admitted that defendant rejected all of his overtures to solicit a licensing agreement. The Court need not rule on this alleged issue, however, since it is not relevant to the Court's conclusion herein whether the statute of limitations is three or six years.

question is not a complicated one. The rule recognized by the courts is that the cause of action first accrues either when the defendant discloses the trade secret or when he first makes use of the plaintiff's ideas. *See Petnel v. American Telephone & Telegraph Co.*, 280 App.Div. 706, 117 N.Y.S.2d 294 (3d Dep't 1953). *See generally* Annotation, 79 A.L.R.3d 820, 826 (1977) (hereinafter "Annotation"). Thus, according to the facts alleged by plaintiff, the second cause of action arose some time in 1966.

Clearly, this action, brought fifteen years after the claim accrued, is barred under a strict application of N.Y. CPLR § 214(4). Plaintiff argues, however, that the New York courts recognize the continuing tort doctrine, such that each use by the defendant of plaintiff's trade secret constitutes a new, actionable tort. Plaintiff's Memorandum in Opposition at 20–22. Defendant takes the contrary position, citing *M & T Chemicals, Inc. v. International Business Machines Corp.*, 403 F.Supp. 1145 (S.D.N.Y. 1975), *aff'd*, 542 F.2d 1165 (2d Cir.), *cert. dismissed*, 429 U.S. 1030, 97 S.Ct. 656, 50 L.Ed.2d 637 (1976).

The states are split over the continuing tort theory as applied in the trade secret context. *Compare Anaconda Co. v. Metric Tool & Die Co.*, 485 F.Supp. 410, 425–26 (E.D.Pa.1980), *with M & T Chemicals, Inc. v. International Business Machines Corp.*, 403 F.Supp. at 1149–50. *See generally* Annotation at 830–36. This split derives from an underlying disagreement whether trade secrets should be treated under the "property" view or the "confidential relationship" view.

■ In New York, the rule may be stated as follows. If a defendant misappropriates and discloses a trade secret, he becomes liable to plaintiff upon disclosure. On the other hand, if the defendant keeps the secret confidential, yet makes use of it to his own commercial advantage, each successive use constitutes a new, actionable tort for the purpose of the running of the Statute of Limitations.

This rule was followed in *Kistler Instrumente A. G. v. PCB Piezotronics, Inc.*, 419 F.Supp. 120 (W.D.N.Y.1976). There, plaintiff alleged patent infringement and misappropriation of trade secrets. He further alleged that his trade secret had not been destroyed by publication by the defendant. Therefore, the court found that the time limitation of § 214(4) began to run at each new use. *Id.* at 123. *Cf. Petnel v. American Telephone & Telegraph Co.*, 280 App. Div. 706, 117 N.Y.S.2d 294, 298–99 (3d Dep't 1952) (defendant utilized plaintiff's ideas in its dial telephone; court remanded for determination of whether such use had occurred within the period of limitations).

■ The obverse of the rule also applies. If the defendant publicizes or otherwise discloses the secrets revealed to him, there can be no continuing tort of unlawful use. As explained by the court in *Sachs v. Cluett Peabody & Co.*, 265 App.Div. 497, 39 N.Y. S.2d 853, 857 (1st Dep't 1943):

"The property in a secret process is the power to make use of it to the exclusion of the world. If the world knows the process, then the property disappears. There can be no property in a process, and no right of protection if knowledge of it is common to the world."

And:

A continuing right may exist where there is an interference with but not destruction or conversion of property. This is aptly illustrated in the example set forth in the brief submitted on behalf of defendant: "If defendant hits plaintiff's horse repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroys plaintiff's horse, or takes it and claims it as his own, plaintiff's right accrues immediately and he must sue within the period of limitation measured from that date—or never."

This principle was applied in *M & T Chemicals, Inc. v. International Business Machines Corp.*, 403 F.Supp. 1145 (S.D.N.Y. 1975). There, the defendant applied for and received a patent based on the alleged unauthorized disclosure of trade secrets. The court dismissed the complaint as time-barred under New York law, citing *Sachs.* It wrote:

If the basis for the theory of continuing wrong lies in the fear that "continuing use of a trade secret constitutes continuous jeopardy to the rightful owner's protection [because] the wrongful user might tend to make the secret generally known," [citation], full-scale disclosure through the issuance of a patent renders the continuing tort theory inapplicable to the instant case. Hence, the issuance of the –059 patent totally destroyed any value the trade secret might have had, and the only action available to plaintiff was one for misappropriation and complete destruction of the secret upon such issuance and not for any future or continued use by defendants.

*Id.* at 1149.

■ In the present case, plaintiff argues that his trade secrets were "never made the subject of a public disclosure by him." Plaintiff's Memorandum in Opposition at 21. Specifically, he argues that his own patent application and Letters Patent do not constitute public disclosure of the secrets in this case such as to destroy the value of those secrets.

The Court agrees that the ideas communicated to the defendant in July of 1966 were distinct from the patented device of which they were applications. However, that does not end the inquiry, under New York law. The Court must further determine whether the *defendant* made use of the trade secret in such a manner that plaintiff's property interests were destroyed.

Plaintiff has defined the uniqueness of the designs he disclosed to the defendant as "the idea of incorporating [his] patented 'bellows construction' in the steering column" of a vehicle "where in the axis of compression and expansion of the patented bellows was in line with the axis of the steering column." (Lemelson Aff., ¶ 10) The uncontroverted evidence shows that defendant has openly and continuously manufactured or marketed children's ride-on toys equipped with bellows-like noise-making devices molded to the steering shaft throughout the period since 1966. This open use of

plaintiff's idea, assuming for the sake of argument that defendant did misappropriate plaintiff's ideas, is equally as destructive of plaintiff's property interests as if defendant had applied for a patent for one of its ride-on toys equipped with bellows, steering column horn. Therefore, plaintiff's cause of action accrued, at the latest, with the marketing of the 1966 tricycle, and was not renewed with each subsequent sale of that toy. Since the latest accrual date precedes the commencement of this action beyond the Statute of Limitations, plaintiff's second cause of action is barred.

## CONCLUSION

Defendant's motion for summary judgment with respect to plaintiff's first cause of action is granted on the ground of laches. The motion with respect to plaintiff's second cause of action is granted for the reason that the claim is barred by the applicable Statute of Limitations. Accordingly, the complaint is dismissed.

It Is So Ordered.